IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAY V. YUNIK, | ) |
| | ) Civil Action No. 2: 14-cv-0202 |
| Plaintiff, | ) |
| | ) |
| v. | ) United District Senior Judge |
| | ) Donetta W. Ambrose |
| JOHN C. WETZEL, et al., | ) |
| | ) United States Magistrate Judge |
| Defendants. | ) Cynthia Reed Eddy |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendants (ECF No. 18) be granted in part and denied in part.

**II.  REPORT**

**A.  Relevant Procedural History**

Plaintiff, Jay V. Yunik, is a prisoner in the custody of the Pennsylvania Department of Corrections, incarcerated at the State Correctional Institution at Forest, Pennsylvania. At the time of the events that give rise to this action, Plaintiff was incarcerated at the State Correctional Institution at Fayette, Pennsylvania.

Plaintiff has brought this lawsuit under 42 U.S.C. § 1983, claiming that his First, Fourth, Eighth, and Fourteenth Amendment rights were violated when his cell was searched in December of 2012, documents were seized during the search, and he was subjected to sanctions

1

for misconduct for possessing contraband, all in retaliation for Plaintiff's exercise of his speech as protected by the First Amendment. (ECF No. 6, page 2).[1]

Named as Defendants are John C. Wetzel, Secretary of the Department of Corrections of Pennsylvania; Brian Coleman, Superintendent of SCI Fayette; Debra Rand, assistant general counsel for the Department of Corrections; Michael Tkacs, Correctional Officer at SCI Fayette; Captain Trempus, Captain of Security at SCI Fayette; and R. Mackey, a misconduct hearings officer. *Id*. at 5.

Plaintiff seeks the expungement of the relevant misconduct from his record, legal fees and costs, and compensatory and punitive damages in excess of $2,000,000. (ECF No. 6, page 3).

Defendants filed the present Motion to Dismiss in which they argue that (i) Plaintiff's retaliation claim should be dismissed, (ii) Defendants Wetzel, Coleman, and Trempus should be dismissed for lack of personal involvement, (iii) Plaintiff's due process claim should be dismissed, and (4) Plaintiff's Fourth amendment claim, as well as his claims under the Pennsylvania state constitution, should be dismissed (ECF Nos. 18 and 19). Plaintiff filed a timely Response to Defendants' Motion to Dismiss. (ECF No. 31). This matter is ripe for disposition. For the reasons set forth below, it is recommended that the Motion to Dismiss be granted in part and denied in part.

---

[1] Although the Complaint states that Plaintiff's rights under the Eighth Amendment were violated, there are no allegations in the Complaint to support such a claim. For example, the Complaint is void of any allegations that the specific conditions of Plaintiff's 26 days of confinement in the Restricted Housing Unit amounted to a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Accordingly, the Court finds that any references to the Eighth Amendment should be stricken.

## B. Relevant Factual History

Plaintiff's Complaint and attached documents set out the following facts.[2] In October, 2012, Plaintiff published a short article, entitled "The Prison Ponzi Scheme," in the Pennsylvania Prison Society's newsletter: *Graterfriends*. The article addresses the issue of prison overpopulation and corruption in Pennsylvania. (ECF No. 6-1, page 1). In this article, Plaintiff states that "when I became acquainted with the redemption process, everything became crystal clear," and "Please check it out yourself under chapter 13 USCA, UCC law." *Id*.

On December 7, 2012, Plaintiff's "cell was subject to a 'General Search,' wherein the search team requested any 'UCC' material in the [Plaintiff's] possession." (ECF No. 6, page 6). Security officers Johnson and Fisher, neither of whom are defendants, conducted the search, and seized a packet of documents labelled in a folder as "redemption." (ECF No. 6-1, page 3). Plaintiff was issued a confiscation receipt, which enumerated the documents seized and outlines the procedures for disposing of the property and for appealing the seizure. (ECF No. 6-1 page 4).

On December 18, 2012, Plaintiff was charged with a misconduct by Defendant Tkacs, alleging that Plaintiff was found to be in possession of contraband U.C.C. materials. (ECF No. 6-1, page 5). The charging slip explained that Defendant Rand had analyzed the materials seized and determined that they fell into the relevant U.C.C. contraband category. *Id*. Plaintiff pleaded not guilty to the misconduct charge on the ground that the seized property was not U.C.C. material. After a hearing before Defendant Mackey, acting as Hearing Examiner, Plaintiff was

---

[2] Attached to the Complaint are a number of documents, including, *inter alia,* the following: Plaintiff's article entitled "The Ponzi Scheme;" and the Affidavit of inmate William Savage. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Therefore, it is not necessary to convert the instant motion to dismiss to a summary judgment motion.

found guilty of the misconduct based upon the written report of Defendant Tkacs. (ECF No. 6-1, page 8). As a result, Plaintiff was sentenced to 30 days in the Restricted Housing Unit at SCI-Fayette, of which Plaintiff served 26 days. (ECF No. 6, page 6).

In February, 2013, Plaintiff was denied parole by the Board of Probation and Parole, for several reasons, including, *inter alia*, his "institutional behavior, including reported misconducts," and failure to participate in treatment and institutional programs. (ECF No. 6-1, page 9).

### C. Standard of Review

1. *Pro Se* Litigants

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir. 1999)).[3] *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d

---

[3] The Court of Appeals for the Third Circuit has explained the liberal construction of pro se

4

Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). *See, e.g.,* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.,* Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

2. Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficienty of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff.

---

pleadings, as follows:

> The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather, they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

Lewis v. Attorney General of U.S., 878 F.2d 714, 722 (3d Cir. 1989) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1286, at 381-84 (1969)).

5

Burtch v. Milberg Factors, Inc., 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in Bell Atlantic Corp. v. Twombly, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Twombly, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after Twombly and Iqbal, the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. Santiago v. Warminster Twp., 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although Iqbal describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing Iqbal, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting Iqbal, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting Iqbal, 556 U.S. at 679). Third, '"where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting Iqbal, 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described

6

or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

### D. Discussion and Analysis

1. First Amendment Claim

Plaintiff claims that his First Amendment right to free speech was violated when, in retaliation for his article in *Graterfriends*, Defendants searched his cell, seized a series of documents, issued a misconduct, and sentenced Plaintiff to 30 days in Restricted Housing. (ECF No. 6, page 6).

In order to state a claim for wrongful retaliation for a prisoner's First Amendment conduct, "a plaintiff must show: (1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." Brightwell v. Lehman,

637 F.3d 187, 194 (3d Cir. 2011). Even if a prisoner establishes the latter three elements to present a prima facia case, "prison officials may still prevail by showing that they 'would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" Bond v. Horne, 553 F. App'x 219, 223 (3d Cir. 2014) (quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)).

The Court finds that the Complaint contains sufficient allegations that Plaintiff's article published in *Graterfriends* constitutes speech which falls squarely within the realm of constitutionally protected conduct, and, thus, there is no need for this Court to further analyze whether Plaintiff was, through his article, exercising his right to speech. Further, there is enough detail in Plaintiff's Complaint to establish that Plaintiff faced adverse actions by a state actor: Defendants searched Plaintiff's cell, seized property, issued a misconduct, found Plaintiff guilty, and sentenced him to 30 days in Restricted Housing. (ECF No. 6, page 6, and ECF No. 19, pages 2-3).

Plaintiff, in his Complaint, also establishes for the purposes of a Motion to Dismiss analysis, that the protected activity (Plaintiff's article in *Graterfriends*) was a substantial motivating factor in Defendant's decision to take the adverse action. (ECF No. 6, page 8). "The [Defendant's] decision . . . to search and seize alleged UCC material and impose sanctions not authorized, is a retaliatory act by the [Defendants] as a direct result of the Petitioner submitting an article to 'GRATERFRIENDS'" *Id*.

Having established, for the purposes of surviving a Motion to Dismiss, all of the requisite elements of a First Amendment retaliation claim, the burden then shifts to the Defendants to show that the confiscation of Plaintiff's UCC materials and the subsequently issued misconduct and punishment would have been done, regardless of Plaintiff's exercise of speech in

*Graterfriends*, in order to further a legitimate penological interest. (ECF No. 19, page 7, s*ee* Bond v. Horne, 553 F. App'x 219, 223 (3d Cir. 2014)). Defendants explain in significant detail the nature of U.C.C. materials, why they are deemed to be contraband for prisoners to possess, and the necessity to confiscate such materials and issue misconducts for prisoner's wrongful possession of such materials. (ECF No. 19, pages 4-7). The Court notes, however, that the matter presently before it is a motion to dismiss, not a summary judgment motion. Defendants will have an ample opportunity to develop a factual record.

In sum, the Court finds that Plaintiff has alleged sufficient facts in his Complaint to state a claim of retaliation for constitutionally protected speech under the First Amendment, and that claim is supported with more than mere conclusions. Plaintiff's claim is sufficient to survive a motion to dismiss.

2. Fourth Amendment Claim

Plaintiff claims that the search and seizure of the property in his cell was in violation of his Fourth Amendment right against unreasonable searches and seizures. (ECF No. 6, page 9). The Supreme Court of the United States has ruled, however, that prisoners hold no privacy interests in their cells: "Society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). In Hudson, the Court acknowledged that maliciously motivated searches, like the one alleged by Plaintiff in this case, "cannot be tolerated by a civilized society." *Id*. at 528. However, the Court still rejected the application of the Fourth Amendment to prison cells because "perhaps the most effective weapon

of the prison administrator in the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband [is the random search.]" *Id*.

Plaintiff alleges that the misapplication of the label "General Search" under the Department of Corrections' Searches of Inmates Cells Policy also constitutes the nature of the Defendant's misconduct. This Court need not determine whether the search should have appropriately been labeled as "General" or "Investigative," because the distinction does not implicate Plaintiff's rights under the Fourth Amendment.

Plaintiff acknowledges that his remarks in *Graterfriends* "obviously led to the search for UCC material during the alleged 'General Search' and subsequent retaliation." (ECF No. 6, page 13). Plaintiff further acknowledges that the materials seized from his cell were labeled, albeit improperly, as "redemption" materials (a reference to U.C.C. contraband). (ECF No. 31, page 2). Sufficient cause to search and seize the property in Plaintiff's cell is soundly established in light of the fact that prisoners enjoy no right to privacy within their cells. It would be futile to allow Plaintiff to amend the Complaint for the purposes of this claim. This claim should be denied.

3. Due Process Claim

Plaintiff claims that his rights under the Due Process Clause of the Fourteenth and Fifth Amendments to the United States Constitution were violated when he was deprived of his property and placed in Restrictive Housing as a result of his misconduct without adequate process. (ECF No. 6, pages 2 and 10-12). This procedural due process claim will be addressed first with respect to Plaintiff's property, and second with respect to Plaintiff's liberty.

A. Property

For a state prisoner to establish a claim of violation of procedural due process with respect to the seizure of property, the plaintiff must show that the deprivation of property was unauthorized and that "a meaningful post deprivation remedy for the loss" is not available. Hudson v. Palmer, 468 U.S. 517, 533 (1984). Assuming, as this Court must under Iqbal, that the Plaintiff's assertion that the property seized was not contraband, Plaintiff's claim still fails because process is available to him in order to gain a remedy for the deprivation. Plaintiff concedes that he received a Confiscated Items Receipt, which allows for either "return to inmate, destruction, or forwarding to the Chief of Security or Chief Counsel's Office." (ECF No. 6, page 10). It also provides Plaintiff with 15 days to file a grievance. (ECF No. 6, page 6). Further, a hearing was held in connection with his possession of contraband, at which the Hearing Examiners were able to review the seizure of the materials and also determine whether to impose sanctions on Plaintiff. Adequate process was provided for the purposes of the Due Process Clause, and, therefore, this claim should be dismissed.

B. Liberty

Plaintiff was sanctioned by Defendants with a misconduct for possessing contraband, amounting to 30 days in Restricted Housing, of which he served 26 days. (ECF No. 6, page 6). Plaintiff asserts that this sanction violated the Due Process Clause because his hearing was inadequate. Plaintiff alleges that the Hearing Examiner who evaluated his case did not review the direct evidence of his misconduct (i.e. the alleged U.C.C. materials), and therefore could not justifiably impose a sanction without adequate "fact finding." (ECF No. 6, page 11). The

Supreme Court of the United States has held, however, that a prisoner's due process rights are not necessarily triggered by being placed in restrictive housing. Due Process liberty interests

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484 (1995). "It has long been held that an inmate has no constitutional right to placement in any particular . . . section within an institution." Butler v. Thompson, 2014 WL 556257 (W.D. Pa. Feb. 13, 2014). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner, 515 U.S. 472, 485 (1995). In Sandin, the Supreme Court addressed a nearly identical form of punishment for a prisoner's misconduct: "Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30days did not work a major disruption in his environment." Id. at 486. Plaintiff's misconduct and sanction of 30 days in Restricted Housing does not trigger procedural due process rights under the United States Constitution. This Court also notes that Plaintiff received a hearing at which the state actors imposing the sanction considered his case. Though they did not review the contraband directly, the Hearing Examiners determined that they "believe[d] Lt. Tkacs written report to be more credible then [sic] I/M Yunik's denial that he was in possession of contraband (U.C.C. material) as determined by review of DOC Legal Office. A propondernce [sic] of evidence exist [sic] to support the # 36 Charge. Guilty # 36 30 days DC." (ECF No. 6-1, page 8). This claim should be denied.

It would be futile to allow Plaintiff to amend his Complaint with respect to either aspect of his Due Process claim. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d

247, 251 (3d Cir. 2007). The alleged conduct does not trigger Due Process protection.

4. Pennsylvania State Constitutional Claims

Plaintiff has stated a number of claims that sound under the constitution of Pennsylvania. The United States Court of Appeals for the Third Circuit has noted that "no Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mountain Charter School v. Pocono Mountain School District, 2011 WL 3737443, *4 (3d Cir. 2011). These claims are not cognizable, and should be dismissed. It would be futile to allow Plaintiff to amend his complaint as to these claims, as they are not cognizable at all by this court.

5. Lack of Personal Involvement

The Court finds that Defendants Wetzel, Coleman, and Trempus should be dismissed from this case as Plaintiff has failed to state a claim against them. "A Defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellaciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). *See also*, Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976); Farrow v. West, 320 U.S. 1235, 1238 (11th Cir. 2003) (stating that "There is no respondeat superior liability for a § 1983 claim"). Defendants Wetzel, Coleman, and Trempus were each mentioned in the Complaint only for the purposes of identifying them as defendants and establishing their positions in the prison system: Secretary of Department of Corrections, Superintendent of SCI Fayette, and Captain of Security at SCI Fayette, respectively. (ECF No. 6, page 5). Beyond these references, these three

Defendants are not mentioned again, nor are they alleged to have any direct dealings with the facts of this case. The only possible reference to these defendants comes from William Savage's affidavit regarding the cause of the search of Plaintiff's cell, which suggested that the order to conduct the search came from "way, way up." (ECF No. 6-1, page 3). The facts asserted by Plaintiff are not sufficient to survive a Motion to Dismiss for failure to state a claim against these Defendants. Defendants Wetzel, Coleman, and Trempus should be dismissed from this case, leaving only Defendants Rand, Tkacs, and Mackey.

### III. CONCLUSION

For all of the foregoing reasons, it is recommended that the Motion to Dismiss filed by the Defendants be granted in part and denied in part. It is further recommended that only the First Amendment retaliation claim survive the present Motion to Dismiss, and that Defendants Wetzel, Coleman, and Trempus be dismissed from the case, leaving only Defendants Rand, Tkacs, and Mackey.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until September 15, 2014 to file objections. Failure to timely file objections will constitute a waiver of any appellate rights. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 3011). Any party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.

Dated: August 29, 2014

s/ Cynthia Reed Eddy<br>
Cynthia Reed Eddy<br>
United States Magistrate Judge

cc:     JAY V. YUNIK
        EK 5560
        P.O. Box 945
        Marienville, PA 16239

        Robert A. Willig
        Office of Attorney General
        Email: rwillig@attorneygeneral.gov