IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAY V. YUNIK, | ) |
| | ) Civil Action No. 2: 14-cv-0202 |
| Plaintiff, | ) |
| | ) Senior United States District Judge |
| v. | ) Donetta W. Ambrose |
| | ) |
| JOHN C. WETZEL, et al., | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants (ECF No. 118) be granted and judgment be entered in their favor.

### II.  REPORT

#### A. Relevant Procedural History

On February 12, 2014, Plaintiff, Jay V. Yunik ("Yunik"), who at the time of the events that give rise to this action was a prisoner confined at the State Correctional Institution at Fayette, Pennsylvania ("SCI-Fayette"), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and the Pennsylvania Constitution.[1]  Originally named as defendants were: John C. Wetzel, Debra Rand, Michael Tkacs, Mr. Trempus, R. Mackey,[2] and Brian Coleman.  In his complaint, Plaintiff alleges that his cell was searched on December 7, 2012, documents were

---

[1]  In August of 2015, Yunik notified the Court that he had been released from prison.

[2]  On January 15, 2015, Defendants filed a Suggestion of Death informing the Court and Plaintiff that Defendant Richard Mackey had died on August 29, 2014.  Thereafter, Plaintiff filed a timely Motion to Substitute the Estate of Richard Mackey.  Without objection, the Motion was granted and Jerri L. Mackey, the Personal Representative and Administratrix of the Estate of Richard Mackey, was substituted as a party defendant. (ECF No. 83).

1

seized during the search and he was subjected to sanctions for misconduct for possessing contraband, all in retaliation for Plaintiff's exercise of his speech as protected by the First Amendment.

On May 19, 2014, Defendants filed a motion to dismiss, seeking dismissal of all claims against them. On August 29, 2014, this Court issued a Report and Recommendation recommending that Defendants' motion to dismiss be granted with regard to all claims, other than Plaintiff's First Amendment retaliation claim against Defendants Rand, Tkacs, and Mackey. The Report and Recommendation was adopted by Memorandum Order of Senior District Judge Donetta W. Ambrose, dated October 22, 2014 (ECF No. 44). As a result, all of Plaintiff's claims against Defendants Wetzel, Coleman, and Trempus have been dismissed. The only claim remaining is Plaintiff's retaliation claim against Defendants Rand, Tkacs, and Mackey.

The parties have since completed discovery, and Defendants Rand, Tkacs, and Mackey have now filed a motion for summary judgment seeking the entry of judgment in their favor on Plaintiff's remaining claim as a matter of law. (ECF No. 118). Plaintiff has filed a response and brief in opposition, along with several exhibits in support. (ECF Nos. 123 and 124). The issues have been fully briefed and the factual record has been thoroughly (ECF Nos. 120 and 121).

**B. Relevant Factual History**

In October, 2012, Plaintiff published a short article, entitled "The Prison Ponzi Scheme," in the Pennsylvania Prison Society's newsletter, *Graterfriends*. The article in its entirety is as follows:

The Prison Ponzi Scheme

    It's difficult to understand the system's obdurate and even nefarious stance on overcrowding in Pennsylvania and in America in general, where more citizens are rotting in prisons than in Russia and China combined.

> However, when I became acquainted with the redemption process, everything became crystal clear. The scheme starts at the local court, after sentencing, when a compassionate attorney compels the convicted to sign a paper. This paper deceptively makes the judge your power-of-attorney, who, in turn, contracts out penal bonds as bid, performance and payment bonds, which instantly pumps money into the court. For example, a felony reaps $4 million worth of bonds that are traded in the stock market under corrections stocks. Please check it out yourself under chapter 13 USCA, UCC law.
>
> Pensions for judges, district attorneys, legislators, wardens, governors, and every other fat-cat in-the-know are directly tied into incarcerations. The more incarcerations there are, the bigger the pensions. This is the incentive for overcrowding of this age. Now, Pennsylvania is on the verge of imploding due to excessive incarceration, high unemployment, the gambling industry, and an inept bankrupt educational system. In short, the oppressive, greedy system in Pennsylvania has literally destroyed the workforce via over incarceration, leaving no tax base to support the system. The systemic mental illness of greed won't be recognized until this state succumbs to bankruptcy.
>
> Jay Yunik
> EK-5560, SCI Fayette

Appendix to Mot. for Summ J., Exh. (ECF No. 121-1 at 2).

On December 7, 2012, security officers Johnson and Fisher, neither of whom are defendants, conducted a general search of Yunik's cell and seized a packet of documents labelled in a folder as "redemption." Yunik was issued a confiscation receipt, which enumerated the documents seized and outlined the procedures for disposing of the property and for appealing the seizure.

On December 18, 2012, Defendant Tkacs issued a misconduct against Yunik alleging the following:

> On 12/7/12, your cell (F-A-2043) was searched by the security office, specifically CO1 Fisher. During the course of the search numerous items were confiscated via DC-154A #B334397 due to suspicion of the material being U.C.C. related. These items included a blue folder labeled "Redemption", copies of Lawyer secret oath, How to beat criminal charges, Take no prisoners, insurance agreements, Birth copy, 31 USCA Sec. 9303, Memo fraud, How to stop foreclosure and Form 56 notice. All of these items were forwarded to Deb Rand, Assistant Counsel, DOC Legal Office, for review. She established that all of the confiscated materials,

3

with the exception of the copies of the statues (sic) themselves, are U.C.C. related materials and therefore are not authorized inmate retention and considered contraband. The copies of the statutes were returned to you.

Defs' Appendix, Exhibit 2 (ECF No. 121-2). Yunik pleaded not guilty to the misconduct charge on the ground that the seized property was not U.C.C. material. After a hearing before Defendant Mackey, acting as Hearing Examiner, Plaintiff was found guilty of the misconduct based upon the written report of Defendant Tkacs. The Disciplinary Hearing Report states as follows:

> I/M Yunik pleas (sic) not guilty to # 36 [Possession of Contraband]
> I/M Yunik submitted / reinterated written version
> I/M Yunik stated "This were my documents, but they are not contraband."
> HEX believes Lt. Tkacs written report to more credible then I/M Yuniks denial that he was in possession of contraband (U.C.C. material) as determined by review of DOC legal office. A preponderance of evidence exist to support the #36 charge.

Disciplinary Hearing Report (ECF No. 6-1, page 8). As a result, Plaintiff was sentenced to 30 days in the Restricted Housing Unit at SCI-Fayette. *Id.*

Plaintiff claims that Defendants Rand, Tkacs, and Mackey confiscated the UCC materials from his cell in retaliation for his published article in the prison newsletter. Defendants argue that based on the summary judgment record evidence Plaintiff cannot establish a retaliation claim.[3]

---

[3] Although not raised in the Complaint, Plaintiff argues in his response and brief in opposition (ECF Nos. 123 and 124) that he was also subjected to a retaliatory institutional transfer on or about June 4, 2013, when he was transferred to SCI-Forest. Such a claim is not cognizable at this late date. However, the Court notes that Defendants would be entitled to summary judgment on such a claim as Plaintiff has not alleged that any of these Defendants was personally involved in the alleged retaliatory transfer. Plaintiff has not made any factual showing that any of these Defendants personally directed his transfer or that any Defendant had contemporaneous, personal knowledge of his transfer and acquiesced in it.

## C. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents ( i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex,* 477 U.S. at 322. *See also Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell,* 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving

party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). *See also El v. SEPTA,* 479 F.3d 232, 238 (3d Cir. 2007).

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Thus, for example, mere allegations, without support, are insufficient. Rather, the allegations must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

**D. Discussion and Analysis**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F. 2d 103, 111-12 (3d Cir. 1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Allah v. Seiverling,* 229 F.3d 220, 224-25 (3d Cir. 2000)).

In order to state a prima facie case of retaliation, a prisoner must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he was subjected to adverse actions[4] at the hands of prison officials; and (3) the protected activity was a substantial motivating factor in the prison officials' decision to take adverse action. *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). If the prisoner has made his prima facie case, the prison officials may still prevail by showing that they "would have made the same decision absent the protected conduct for reasons

---

[4] To show an "adverse action,' the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Al-Hafeez,* 208 F. Supp.2d 520, 535 (E.D. Pa. 2002) (quoting *Allah v. Seiverling,* 229 F. 3d at 225)).

6

reasonably related to a legitimate penological interest." *Bond v. Horne*, 2014 WL 278526 at *2 (3d Cir. 2014).

As described *supra,* Yunik's retaliation claim arises from a single cell search that occurred on December 7, 2012, during which contraband, in the form of U.C.C. material was confiscated from his cell. Courts have consistently held that cell searches are not an "adverse action" for retaliation purposes. *See e.g., Dickerson v. Gordon*, 2015 WL 5785575 (M.D.Pa. Sept. 30, 2015); *Curtician v. Kessler*, 2010 WL 6557099 (W.D.Pa. Nov. 29, 2010); *Brooks v. Smith*, No. 3:04-cv-2680, 2007 WL 3275266 at *2 (M.D.Pa. Nov. 6, 2007) (finding that "retaliation claim premised on pat searches and cell searches . . . could not serve as the requisite 'adverse action' to support a retaliation claim); *Salahuddin v. Mead*, No. 95 Civ. 8581, 2002 WL 1968329 (S.D.N.Y. Aug. 26, 2002) (dismissing retaliation claim based on cell searches, finding that plaintiff suffered no adverse action).

Based on the foregoing, Yunik has failed to satisfy the second prong of his retaliation claim based upon the single cell search conducted on December 7, 2012. Furthermore, it is not disputed that the Department of Corrections has a policy that U.C.C. material is contraband subject to seizure and discipline and that courts have held that these policies pass constitutional muster. *See Snee v. Barone,* 2009 WL 51003553 (3d Cir. 2009); *Monroe v. Beard*, 536 F.3d 198 (3d Cir. 2008); *Dantzler v. Beard,* Civ. A. No. 09-275, 2010 WL 1008294 (W.D.Pa. 2010). Yunik did not have a protected right to possess such contraband.

Based on the summary judgment record evidence, the Court finds that Plaintiff has failed to establish that he was subjected to adverse action and therefore cannot meet the required elements to establish a claim of retaliation. Accordingly, the Court recommends that summary judgment be granted in favor of Defendants.

## III.  CONCLUSION

For all of the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file Objections to this Report And Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: December 15, 2015

s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

cc:  JAY V. YUNIK  
     P.O. Box 525  
     Linesville, PA 16424  
     (via U.S. First Class Mail)


     Robert A. Willig  
     Office of Attorney General  
     (via ECF electronic notification)